**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**ORLANDO MONTES,**

    **Plaintiff,**

**v.**                                                                         **16-cv-0126 JCH/SMV**

**PINNACLE PROPANE, L.L.C.,**
**ALLEN SULTEMEIER, COUNTY OF LINCOLN,**
**LINCOLN COUNTY FAIR ASSOCIATION,**
**and JOHN DOES I-II,**

    **Defendants.**

**ORDER GRANTING IN PART AND DENYING IN PART**
**PLAINTIFF'S MOTION TO COMPEL DEFENDANT**
**PINNACLE PROPANE'S ANSWER TO WRITTEN DISCOVERY**

THIS MATTER is before the Court on Plaintiff's Motion to Compel Defendant Pinnacle Propane's Answer to Written Discovery [Doc. 79], filed on July 14, 2016. Defendant Pinnacle Propane responded on July 27, 2016. [Doc. 93]. Plaintiff replied on August 10, 2016. [Doc. 106]. The Court heard oral argument on September 12, 2016. *See* [Doc. 132].

Plaintiff moves to compel Defendant Pinnacle to answer without objection Request for Production numbers ("RFP") 13 and 14 from his third set of written discovery requests. [Doc. 79] at 2–3. The Court will deny Plaintiff's motion regarding RFPs 13 and 14. However, the Court will order Pinnacle to produce, subject to the already entered Confidentiality Order [Doc. 54], a statement of its net worth, verified by a Certified Public Accountant, no later than October 20, 2016.

**Standard of Review Regarding Discovery Generally**

The proper scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The Federal Rules of Evidence define relevant evidence as that which has "any tendency to make a fact more or less probable than it would be without the evidence," where "the fact is of consequence in determining the action." Fed. R. Evid. 401. The scope of discovery under the federal rules is broad. *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1520 (10th Cir. 1995); *Sanchez v. Matta*, 229 F.R.D. 649, 654 (D.N.M. 2004) ("The federal courts have held that the scope of discovery should be broadly and liberally construed to achieve full disclosure of all potentially relevant information."). The federal discovery rules reflect the courts' and Congress's recognition that mutual knowledge of all the relevant facts gathered by all parties is essential to proper litigation. *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). As a result, Rule 26 "contemplates discovery into any matter that bears on or that reasonably could lead to other matter[s] that could bear on any issue that is or may be raised in a case." *Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645, 649 (D.N.M. 2007) (alteration in original) (internal quotation marks omitted). The party seeking discovery has the burden to demonstrate its relevance. *XTO Energy Inc. v. ATD, LLC*, No. 14-cv-1021 JB/SCY, 2016 U.S. Dist. LEXIS 570505 at *58–59 (D.N.M. Apr. 1, 2016) (unpublished) (thoroughly explaining the current state of discoverability under the Federal Rules of Civil Procedure).

A district court, however, is not "required to permit [a party] to engage in a 'fishing expedition' in the hope of supporting his claim." *McGee v. Hayes*, 2002 WL 1608456, 43

F. App'x 214, 217 (10th Cir. July 22, 2002); *see Tottenham v. Trans World Gaming Corp.*, No. 00 Civ. 7697(WK), 2002 WL 1967023, at *2 (S.D.N.Y. June 21, 2002) (unpublished) ("Discovery, however, is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support." (internal quotation marks omitted)); *Hardrick v. Legal Servs. Corp.*, 96 F.R.D. 617, 618 (D.D.C. 1983) (noting that courts do, and should, remain "concerned about fishing expeditions, discovery abuse[,] and inordinate expense involved in overbroad and far-ranging discovery requests" (internal quotation marks omitted)).  "[B]road discovery is not without limits[,] and the trial court is given wide discretion in balancing the needs and rights of both plaintiff and defendant." *Gomez*, 50 F.3d at 1520 (internal quotation marks omitted).

While it is true that relevance in discovery is broader than that required for admissibility at trial, "the object of inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue." *Zenith Elec. Corp. v. Exzec, Inc.*, No. 93 C 5041, 1998 WL 9181, at *2 (N.D. Ill. Jan. 5, 1998) (unpublished) (internal quotation marks omitted).  Courts have also "recognized that [t]he legal tenet that relevancy in the discovery context is broader than in the context of admissibility should not be misapplied so as to allow fishing expeditions in discovery." *Id.* (alteration in original) (internal quotation marks omitted).

### Discovery Related to Claims for Punitive Damages

"[I]f a plaintiff has alleged sufficient facts to claim punitive damages against a defendant, information of the defendant's net worth or financial condition is relevant because it can be considered in determining punitive damages." *Roberts v. Shawnee Mission Ford, Inc.*, No. 01-

2113-CM, 2002 U.S. Dist. LEXIS 9525, at *10 (D. Kan. Feb. 7, 2002) (internal quotation marks omitted).  The party requesting the discovery generally does not need to "establish a prima facie case on the issue of punitive damages before it can obtain pretrial discovery of the other party's financial statements and tax returns." *Id.* at *10–11 (internal brackets omitted).  "To discover a party's financial condition in light of a claim for punitive damages, requesting parties generally must show the claim for punitive damages is not spurious." *Id.* (citation omitted).  A claim is not spurious if "**sufficient facts have been alleged** to make a claim for punitive damages." *Krenning v. Hunter Health Clinic, Inc.*, 166 F.R.D. 33, 34 (D. Kan. 1996) (emphasis added).

## Background

This case arises from a propane explosion that resulted in the death of Ms. Viola Montes. [Doc. 49].  Plaintiff alleges that Pinnacle's then-employee, Defendant Sultemeier, was "intentional, reckless and grossly negligent" in filling the propane tank at issue.  *Id.* at 12.  Plaintiff claims punitive damages against Pinnacle for the actions of Defendant Sultemeier. [Doc. 106] at 4 n.2 (citing *EEOC v. Wal-Mart Stores, Inc.*, 11 F. Supp. 2d 1313, 1321–23 (D.N.M. 1998)[1]).

---

[1] In relevant part, the court in *Wal-Mart* stated:

> Since both New Mexico and the Tenth Circuit follow the Restatement in determining the propriety of a punitive damages award based upon the acts of an agent, it is appropriate to look at New Mexico law in this area.  *See Abeita v. Northern Rio Arriba Electric Cooperative*, 124 N.M. 97, 946 P.2d 1108, 1119, 1997 NMCA 97 (N.M. Ct. App. 1997) (stating "to determine whether punitive damages can be assessed against a principal based on the conduct of an agent, New Mexico has adopted the test set forth in Restatement (Second) of Torts § 909(c) (1979) and Restatement (Second) of Agency § 217C(c) (1958)").
>
> The New Mexico Supreme Court has noted that if corporate liability for punitive damages were to be based solely upon the behavior of the highest-level corporate managers, large corporations that routinely delegate responsibility for day-to-day employment-related

To obtain evidence to support his punitive damages claim against Pinnacle for the actions of Sultemeier, Plaintiff propounded RFPs 13 and 14 on Pinnacle, and Pinnacle answered as follows:

> **REQUEST FOR PRODUCTION NO. 13:** Please produce the state and federal tax returns, including all schedules and forms for Pinnacle Propane, LLC for calendar years 2014 and 2015.
> **RESPONSE:**
> We object to this request. Financial information is only relevant to support a claim of punitive damages. However, before obtaining discovery as to a party's financial condition, it must be shown that the claim for punitive damages is not spurious. *See Pedroza v. Lomas Auto Mall, Inc. et al.*, No. CIV 07-0591 JB/RHS (citing *Clement v. Mountain States Logistics*, 2006 U.S. Dist. LEXIS 95650 at \*6). A prima facie case for punitive damages can be established by demonstrating conduct that is malicious, willful, reckless, wanton, fraudulent, or in bad faith. Alternatively, a punitive damages claim can be established against an employer if there is evidence that the employer authorized, participated in, or ratified an employees' [sic] conduct. Here, there is no evidence of any of the aforementioned conduct. Plaintiff has not established a prima facie case of entitlement to punitive damages as to Pinnacle Propane and the claim is spurious.
>
> **REQUEST FOR PRODUCTION NO. 14:** Please produce each financial statement provided to a financial institution or taxing authority for the period January 2, 2014 to June 1, 2016 including the name and address of the institution or agency to whom the request was submitted and identify the custodian of the documents.

---

decision-making responsibilities "could unfairly escape liability for punitive damages by virtue of their size." *Albuquerque Concrete v. Pan Am Services*, 118 N.M. 140, 146, 879 P.2d 772 (1994) (Frost , J.). If I were to adopt the position advocated by Wal-Mart, Wal-Mart would rarely, if ever, be liable for discriminatory application, interviewing and hiring practices.

As Justice Frost of the New Mexico Supreme Court stated:
> Corporate liability for punitive damages should depend upon corporate responsibility for wrongdoing, not corporate ability to insulate top executives from daily, hands-on management, i.e. only through exercising the "whole executive power" of the corporation …. **When a corporate agent with managerial capacity acts on behalf of the corporation, pursuant to the theoretical underpinnings of the Restatement rule of managerial capacity, his acts are the acts of the corporation; the corporation has participated**.

*Id.*

*Wal-Mart*, 11 F. Supp. 2d at 1323 (ellipsis in original) (emphasis added).

> **RESPONSE:**
> We object to this request. Financial information is only relevant to support a claim of punitive damages. However, before obtaining discovery as to a party's financial condition, it must be shown that the claim for punitive damages is not spurious. *See Pedroza v. Lomas Auto Mall, Inc. et al.*, No. CIV 07-0591 JB/RHS (citing *Clement v. Mountain States Logistics*, 2006 U.S. Dist. LEXIS 95650 at *6). A prima facie case for punitive damages can be established by demonstrating conduct that is malicious, willful, reckless, wanton, fraudulent, or in bad faith. Alternatively, a punitive damages claim can be established against an employer if there is evidence that the employer authorized, participated in, or ratified an employees' [sic] conduct. Here, there is no evidence of any of the aforementioned conduct. Plaintiff has not established a prima facie case of entitlement to punitive damages as to Pinnacle Propane and the claim is spurious.

[Doc. 79-3] at 3–4.

## Analysis

Plaintiff moves the Court to compel Pinnacle to respond to RFPs 13 and 14 without objection. [Doc. 79] at 2–3 (citing Fed. R. Civ. P. 37). Plaintiff argues that his claim for punitive damages against Pinnacle is not spurious, and therefore, he is entitled to discovery on Pinnacle's wealth. *Id.* at 3. Plaintiff argues that punitive damages can be awarded against Pinnacle for the actions of Sultemeier if Sultemeier was "employed in a managerial capacity and was acting in the scope of his employment" when he committed the tortious conduct. *Wal-Mart*, 11 F. Supp. 2d at 1322. In his Amended Complaint, Plaintiff repeatedly alleges that Sultemeier was a "manager," "managing employee," "management employee," and "supervisory employee." [Doc. 49] at 3, 4, 8, 10, 11, 14, 15 (Sultemeier held a "management position."), 16 ("Sultemeier had management discretion to perform the service [of dispensing propane] and supervise a subordinate employee."), 23. Moreover, although he is not required to produce evidence at this stage, *see Krenning*, 166 F.R.D. at 34, Plaintiff cites to evidence that he believes

support his allegations that Sultemeier was a manager under *Wal-Mart*, *see* [Doc. 79] at 4 (referring to Sultemeier's business card, Sultemeier's deposition testimony about his position, and Pinnacle's answers to written discovery acknowledging that Sultemeier was holding himself out as a manager); [Doc. 106] at 2–3 (referring to excerpts from Sultemeier's personnel file identifying him as a manager and deposition testimony of Damon Spearman acknowledging that Sultemeier was holding himself out as a manager).

Pinnacle disagrees. At oral argument, defense counsel adamantly argued that even if Sultemeier had been a manager—which Pinnacle disputes—it would not be enough to trigger punitive damages and, in fact, would be inconsistent with the applicable jury instruction. Pinnacle argues that the question is not whether Sultemeier was a manager. Rather, Pinnacle argues that the question is whether "[Sultemeier] was acting in the scope of his employment [with Pinnacle] and had sufficient discretionary or policy-making authority to speak and act for [Pinnacle] with regard to the conduct at issue, independently of higher authority . . . ." *Id.* at 4–5 (quoting UJI 13-1827 NMRA). Pinnacle argues that Plaintiff's allegations, even if true, do not meet this standard.

Specifically, Pinnacle argues that because Plaintiff alleges that Sultemeier's conduct was criminal, such conduct could not have been within his scope of employment. *Id.* at 5. Next, Pinnacle argues that Plaintiff's allegation that Sultemeier was providing propane at no cost shows that Sultemeier was acting outside the scope of his employment because providing free propane "does nothing to further Pinnacle[']s interests." *Id.* Further, even assuming that Sultemeier had been acting within the scope of his employment, Pinnacle argues that Plaintiff

7

has failed to allege facts that establish that Sultemeier had "sufficient discretionary or policy-making authority to speak for" Pinnacle.  *Id.*  Pinnacle disagrees that the job title of "service manager" could suffice to evidence such authority.  *Id.*  The Court is not persuaded by Pinnacle's arguments.

First, Pinnacle cites no authority for its position that Plaintiff's allegations that Sultemeier's conduct was criminal (or that he was giving away free propane) *necessarily* preclude that conduct from being within the course and scope of his employment.  Second, Defendant does not dispute that Plaintiff's allegations could meet the managerial-capacity standard outlined in *Wal-Mart*.  The Court agrees with Plaintiff that his allegations meet that standard such that discovery is appropriate.  Third, the Court finds that Plaintiff's allegations also meet the discretionary-or-policy-making-authority standard from the jury instruction.

The Court understands that Pinnacle disputes whether Sultemeier was acting in the course and scope of his employment and further disputes that he actually had sufficient discretionary or policy-making authority to speak and act for Pinnacle with regard to the conduct at issue, independently of higher authority.  At this stage, however, where the issue is whether Plaintiff's position is "spurious," Pinnacle's factual dispute is not enough to preclude discovery.  The Court finds that Plaintiff's claim for punitive damages against Pinnacle for the actions of Sultemeier is not spurious.  Plaintiff meets his burden to show that Pinnacle's net worth is relevant to the claim.  Pinnacle's net worth is discoverable.

Perhaps anticipating that the Court might conclude that the claim was not spurious, Pinnacle offers an alternative argument.  [Doc. 93] at 6.  Pinnacle argues that it should not be

8

required to produce its tax returns or bank statements.  *Id.*  Rather, it argues that it should be required only to produce a sworn statement of its net worth.  *Id.* (citing [Doc. 163] in *DKD Electric Co., Inc. v. Allied Tube & Conduit, Inc.*, 97-cv-1026 BB/LFG (D.N.M. Aug. 5, 1998) (unpublished)).  The Court finds Judge Garcia's rationale in *DKD Electric* persuasive.  The Court will deny Plaintiff's motion regarding RFPs 13 and 14.  However, the Court will order Defendant Pinnacle Propane to produce, subject to the already entered Confidentiality Order [Doc. 54], a statement of its net worth, verified by a Certified Public Accountant, no later than **October 20, 2016**.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Compel Defendant Pinnacle Propane's Answer to Written Discovery [Doc. 79] is **GRANTED IN PART and DENIED IN PART**.

- Defendant Pinnacle Propane must produce to Plaintiff, subject to the already entered Confidentiality Order [Doc. 54], a statement of its net worth, verified by a Certified Public Accountant, no later than **October 20, 2016**.
- Each side will bear its own expenses.  *See* Fed. R. Civ. P. 37(a)(5)(C).

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**