## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**ORLANDO MONTES, as Personal**
**Representative of Viola Montes**
**and individually,**

**Plaintiff,**

**vs.**                                                          **Civ. No. 16-126 JCH/LAM**

**PINNACLE PROPANE, LLC, et al,**

**Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on *County of Lincoln's and Sheriff Shepperd's Motion for Judgment on the Pleadings and Qualified Immunity* [Doc. 77]. After a review of the allegations in the Amended Complaint, the arguments raised by the parties [Docs. 77, 99, 116], and the relevant legal precedents and authorities, the Court concludes that the motion should be granted in part. Specifically, Plaintiff's sole federal claim—violation of Viola Montes' Fourteenth Amendment right to due process—should be dismissed. However, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, and the case will be remanded to state district court.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises from the alleged wrongful death of Viola Montes, who died of injuries she sustained from a propane tank explosion at the Lincoln County Fairgrounds on July 2, 2015. On January 19, 2016, Plaintiff Orlando Montes, the husband of Viola Montes, filed his original Complaint in the Twelfth Judicial District Court, County of Lincoln, State of New Mexico. Doc.

1-4. On February 22, 2016, Defendant Lincoln County removed the case to this federal district court on the basis of federal question jurisdiction, citing the claims brought against it for violation of Viola Montes' constitutional rights under 42 U.S.C. § 1983. Doc. 1. On June 6, 2016, Plaintiff filed his Amended Complaint [Doc. 49], which added both factual allegations and legal claims, as well as joined additional defendants in the case.

Generally speaking, Montes alleges that his and Viola Montes' daughter, Corinne Prudencio, operated a food concession stand with Corinne's husband Fabian Prudencio, at the Lincoln County Fair on July 2, 2015. Doc. 49 at ¶¶ 13, 32, 34. On that date, Montes alleges that Defendants Allen Sultemeier[1] and Christopher Olson, employees of Defendants Pinnacle LLC, improperly over-filled the Prudencios' propane tank and did so without the necessary permits or safety equipment, and without ensuring that the tank had a valid certification date. Doc. 49 at ¶¶ 35, 37, 40. After Sultemeier and Olson improperly supercharged the tank, it overheated and exploded. Doc. 49 at ¶ 42. Viola Montes was working in the Prudencio's concession trailer. Doc. 49 at ¶ 34. As a result of the explosion, the concession trailer caught fire, and Viola Montes suffered extensive burns and other injuries; she died 17 days later. Doc. 49 at ¶¶ 43, 48. According to the Amended Complaint, shortly after the fire a deputy from the Lincoln County Sheriff's Office told his dispatcher that the propane explosion was under control and that the first ambulance dispatched could respond to a cardiac emergency instead of to the fairgrounds, causing a delay in emergency medical treatment. Doc. 49 at ¶ 46. Montes alleges that Defendants Robert Shepperd (Lincoln County Sheriff) and Billy Bob Schaffer (President of the Lincoln County Fair Association) ignored the orders of the local police chief and took down the evidence tape surrounding the area of the explosion, and then had all physical evidence at the scene

---

[1] Additionally, Montes alleges that Sultemeier was acting as an agent for the Lincoln County Fair Association.

destroyed by a backhoe. Doc. 49 at ¶¶ 114-118. Montes alleges that Lincoln County and the Lincoln County Fair Association ("LCFA") "breached their duty to maintain the premises in a safe condition by allowing an unsafe, ultra-hazardous and potentially deadly condition to exist on the premises." Doc. 49 at ¶ 29. He also alleges that Lincoln County and LCFA "failed to have a policy in place to verify vendors using propane had obtained the Special Events Permit required to dispense propane during special events on the Lincoln County Fairgrounds." Doc. 49 at ¶ 31.

With regard to Lincoln County and Sheriff Robert L. Shepperd, the movants currently before this Court, the Amended Complaint asserts claims as follows: wrongful death under the New Mexico Wrongful Death Act (Count I), against Lincoln County; violation of Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983 (Count II), against Lincoln County; negligent maintenance of public property (Count III) under the New Mexico Tort Claims Act, against Lincoln County; negligence per se (Count IV), against Lincoln County; loss of consortium (Count V) against Lincoln County; negligent infliction of emotional distress (Count VI), against Lincoln County; intentional or negligent spoliation of evidence (Count VIII) against Shepperd; and breach of contract (Count IX) against Lincoln County.

On July 12, 2016, Lincoln County and Shepperd filed the motion now before the Court. However, on July 20, 2016, this Court entered a Stipulated Order [Doc. 82] in which the parties agreed to dismissal of all individual capacity claims against Shepperd. This rendered moot the portion of the motion asserting that Shepperd is entitled to qualified immunity.

## LEGAL STANDARD

The same standards that govern a motion to dismiss under rule 12(b)(6) also govern a motion for judgment on the pleadings under rule 12(c). *See Atl. Richfield Co. v. Farm Credit*

*Bank*, 226 F.3d 1138, 1160 (10th Cir. 2000). Under rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering and addressing a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. *See Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006); *Hous. Auth. of Kaw Tribe v. City of Ponca City*, 952 F.2d 1183, 1187 (10th Cir. 1991).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937. *See Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011) (stating that the "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully"). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citation omitted).

**DISCUSSION**

I.    **THE PROPER WAY TO SUE LINCOLN COUNTY**

Defendants argue that Montes has failed to name the proper entity in order to assert a viable claim against Lincoln County, and therefore his claims against the entity should be dismissed.

New Mexico law provides that all lawsuits against a county must be brought against the board of county commissioners for that county. N.M. Stat. Ann. § 4-46-1. The caption of the Amended Complaint [Doc. 49] lists the defendant as "County of Lincoln, *by and through its County Commission*." (emphasis added). Further, Paragraph 7 of that document states: "County is sued through its Board of Commissioners with the statutory power to sue and be sued." Accordingly, the Court concludes that the Amended Complaint clearly shows that Lincoln County is being sued through its board of county commissioners. This argument is without merit.

Next, Lincoln County argues that all claims against Shepperd in his official capacity as Sheriff should be dismissed because they are duplicative of the claims against Lincoln County itself. As the Tenth Circuit has noted, "[a]n action against a person in his official capacity is, in reality, an action against the government entity for whom the person works." *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1009 (10th Cir. 1998). Because Montes has properly named Lincoln County as a defendant by suing its board of county commissioners as discussed above, there is no need to keep the claims against Shepperd in his official capacity as Lincoln County Sheriff. Further, in his response brief [Doc. 99] Montes does not oppose the dismissal of the official capacity claims. Accordingly, this portion of the motion will be granted, and the official capacity claims against Shepperd will be dismissed as duplicative.

## II.      CONSTITUTIONAL CLAIMS AGAINST LINCOLN COUNTY (Count II)

Montes asserts that "Viola Montes had a constitutional right to life protected by the Fourth and Fourteenth Amendments" that "was taken from Viola [] by Defendants without procedural and substantive due process." Doc. 49 at ¶ 56. He also asserts that the County has "either directly or vicariously, violated Viola Montes' right to procedural and substantive due process guaranteed by the Fourth and Fourteenth Amendments . . ." Doc. 49 at ¶ 67. The Fourth Amendment protects against unreasonable searches and seizures; it confers no due process rights. Accordingly, the Court infers that Montes instead intended to refer to the Fifth Amendment, which prohibits the deprivation of life, liberty, or property without due process of law.

### A.      Due Process Law

The Due Process Clause of the Fifth Amendment applies only to due process violations by the federal government. *Koessel v. Sublette County Sheriff's Dept*., 717 F.3d 736, 748 n. 2 (10th Cir. 2013). *See also Public Utilities Comm'n v. Polak*, 343 U.S. 451, 461 (1952) (Fifth Amendment applies to and restricts only the Federal Government and not private persons). Because Montes asserts a claim against Lincoln County, which is an arm of the State of New Mexico, and not against the United States, the Fifth Amendment due process clause does not apply. Accordingly, Montes' Fifth Amendment claim will be dismissed.

The Fourteenth Amendment prohibits a State from depriving "any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. This provision guarantees "more than fair process"; it also covers a "substantive sphere . . ., barring certain government actions regardless of the fairness of the procedures used to implement them." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (quotations omitted). However, "nothing in the

language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors," *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989). Rather, "state actors are liable only for their own acts, and not the violent acts of third parties." *Armijo v. Wagon Mound Pub. Schs.*, 159 F.3d 1253, 1260 (10th Cir. 1998). Thus, "a State's failure to protect an individual against private violence . . . does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). "There are, however, two recognized exceptions to this rule. First, state officials may be liable for the acts of private parties when the state has assumed a special relationship with and control over an individual. Second, state officials can be liable for the acts of private parties where those officials created the very danger that caused the harm." *Estate of B.I.C. v. Gillen*, 710 F.3d 1168, 1173 (10th Cir. 2013) (citation omitted).

Montes has alleged in the Amended Complaint that Sultemeier and Olson filled the gas tank that caught fire and caused Viola Montes' injuries at an improper place and in an improper manner. Montes has also alleged that the County failed to ensure that Sultemeier and Olson had the proper permits to dispense propane and allowed an unsafe, ultra-hazardous and potentially deadly condition to exist on the premises. In essence, Montes contends that the County failed to properly supervise activities at the Lincoln County Fairgrounds, which permitted Sultemeier and Olson to fill the tank in a dangerous manner. Thus, under the facts alleged in the Amended Complaint, it is the acts of Sultemeier and Olson that caused harm to Viola Montes. Thus, in order to be held liable for violation of Viola Montes' constitutional right to due process, Lincoln County must have either had a special relationship with her, or the County must have created the very danger that caused her harm.

**B.      Special Relationship Exception**

"The special relationship doctrine applies when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual." *Schwartz v. Booker*, 702 F.3d 573, 579 (10th Cir. 2012) (internal quotation marks omitted). If "the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself," then "the Constitution imposes upon [the State] a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney v. Winnebago Cnty Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989). This "affirmative duty to protect arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." *Id*.

Montes does not allege facts demonstrating any special relationship as described in *DeShaney* between Lincoln County and Viola Montes. Further, in his response to the motion he does not argue that a special relationship existed. Therefore, this exception does not apply.

C.      **Danger Creation Exception**

Montes argues the second exception—the danger-creation exception—applies here. To invoke the danger-creation exception, a plaintiff must establish as a threshold matter (1) private violence, and (2) affirmative conduct on the part of the state in placing the plaintiff in danger. *Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 920 & n. 8 (10th Cir. 2012); *see also Estate of B.I.C.*, 710 F.3d at 1173. Thus, in order for Montes' claim to survive, he must allege facts to support both private violence and affirmative conduct by Lincoln County placing Viola Montes in danger.

If the allegations in the Amended Complaint satisfy these two threshold issues, Montes must also plead facts that would satisfy all elements of a six-part test: (1) the County created the

8

danger or increased plaintiff's vulnerability to the danger in some way; (2) plaintiff was a member of a limited and specifically definable group; (3) the County's conduct put plaintiff at substantial risk of serious, immediate, and proximate harm; (4) the risk was obvious or known; (5) the County acted recklessly in conscious disregard of that risk; and (6) such conduct, when viewed in total, is conscience shocking. *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1281 (10th Cir. 2003) (quotations omitted).

### 1. <u>Private violence</u>

In construing the term "private violence," the Tenth Circuit has considered the definition of violence in Black's Law Dictionary: "physical force unlawfully exercised with the intent to harm." *Gray*, 672 F.3d at 928. Thus, an act of private violence is generally an act such as murder, stabbing, shooting, kidnapping, or sexual assault. *See, e.g., Graham v. Indep. Sch. Dist. No. I-89*, 22 F.3d 991, 993 (10th Cir. 1994); *Uhlrig v. Harder*, 64 F.3d 567, 571 (10th Cir. 1995); *Liebson v. New Mexico Corr. Dept.*, 73 F.3d 274, 275 (10th Cir. 1996); *Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F.3d 1226, 1230-31 (10th 1999); *Currier v. Doran*, 242 F.3d 905, 909-10 (10th Cir. 2001). Further, violence requires "[a]t the very least" some degree of deliberateness on the part of the private actor; negligence is insufficient. *Gray*, 672 F.3d at 928-29. Thus, no constitutional violation occurs when a private party's underlying *negligent* act is directly responsible for the victim's harm. *Id*. at 929-30.

Here, Montes alleges that:

> Sultemeier and Olson filled four tanks including a 100 lb. propane tank owned by Fabian and Corinne Prudencio in an unauthorized area with actual knowledge the tank was out of certification and lacked the necessary safety ring. Sultemeier and Olson intentionally and recklessly filled the tank without the required scales to weight the tank during the filling process to insure it was not overfilled or supercharged. Sultemeier and Olson also knew the manner in which they were filling the tanks from a hose from a Pinnacle LLC truck was illegal. . . . Had Sultemeier and Olson performed the simple act of verifying a certification date as

> required by law, they would have realized the 100 lb. tank was manufactured in
> 1947 and had not been recertified in the quarter century before the propane
> explosion which killed Viola Montes. Such act was intentional and criminal under
> the law of New Mexico.

Doc. 49 at ¶ 40. He further alleges that Sultemeier violated specific safety regulations

"intentionally, knowingly, recklessly and in conscious disregard of the risk." Doc. 49 at ¶ 65.

In light of *Gray* and the other decisions described above, the Court concludes that the

allegations of the Amended Complaint do not rise to the level of "private violence" as it is

understood by the Tenth Circuit. Rather, the allegations of the Amended Complaint amount to

acts of negligence or recklessness. There is no factual allegation that supports an inference that

Soltemeier and Olson intended to cause a fire or intended to harm anyone at the Lincoln County

fairgrounds. Thus, Montes' claim for violation of Viola Montes' due process rights should be

dismissed for failure to satisfy the private violence requirement.

## 2.    **Affirmative conduct**

"The affirmative conduct requirement typically involves conduct imposing an immediate

threat of harm, which by its nature has a limited range and duration, and is "directed at a discrete

plaintiff rather than the public at large. Inaction by the state is insufficient." *Hernandez v. Ridley*,

734 F.3d 1254, 1259 (10th Cir. 2013) (internal citations and quotations omitted). All three

components of this test must be satisfied in order to constitute "affirmative conduct."

In *Hernandez*, the plaintiff's decedents were road construction workers who were killed

by a motorist. The plaintiff alleged that the Oklahoma Director of Transportation was responsible

for adequately training ODOT employees and establishing standard safety procedures to protect

construction personnel working on Oklahoma roads, but that the Director failed to implement

any such guidelines, policies, regulations or procedures. *Id*. at 1260. Asserting a substantive due

process claim, the plaintiff alleged that it was this lack of guidelines and procedures that led to

conditions allowing a third party motorist to cause the deaths of two construction workers. *Id*. The Tenth Circuit held that this "alleged failure to promulgate safety standards governing road construction in Oklahoma is not affirmative conduct but rather inaction, which is insufficient." *Id*. The plaintiff also alleged that the Director had adopted policies imposing financial penalties for failure to complete construction projects on time, which in turn created a financial incentive for the construction company to take shortcuts which exposed its workers, the decedents, to unsafe conditions. *Id*. Again, the Tenth Circuit concluded that this was not "affirmative conduct." The court reasoned that at the time the Director's adopted these policies, the decedents were not "identifiable victims" and the policies "did not pose a threat of immediate and proximate harm" to them, but rather presented "a threat of an indefinite range and duration to a broader populace." *Id*. (quoting *Gray*, 672 F.3d at 926-27).

The facts pled in the Amended Complaint fail for similar reasons. Montes alleges that Lincoln County had and breached a "duty to maintain the fairgrounds in a safe condition," "to prevent or correct known safety violations, and "to warn persons who could be harmed by the unlawful dispensing of an inherently dangerous product." Doc. 49 at ¶ 38-39. Montes also alleges that the County "knew or could have reasonably foreseen" that Sultemeier and Olson "were dispensing propane and filling propane tanks on County owned premises in unauthorized public areas, without the necessary safety equipment and in violation of applicable law and regulations." Doc. 49 at ¶ 31. He further alleges that the County "failed to have a policy in place to verify vendors using propane had obtained the Special Events Permit required to dispense propane during special events on the Lincoln County Fairgrounds." *Id*. Just as in *Hernandez*, Montes' allegations are based upon the County's failure to act—in this case, a failure to supervise and regulate the distribution of propane at the Lincoln County Fairgrounds, which in

turn led to a third party creating the dangerous condition that cause Viola Montes' death. Under *Hernandez* this failure to act by the County is not "affirmative conduct." Furthermore, none of Montes' allegations support the inference that Lincoln County created a threat that was targeted at Viola Montes. Rather, those allegations suggest that Lincoln County's actions (or inaction) presented "a threat of an indefinite range and duration to a broader populace," e.g., all those in attendance at the Lincoln County Fairgrounds. The threat presented by the improper and unregulated distribution of propane at the Fairgrounds was not "directed at a discrete plaintiff" such as Viola Montes.

Thus, under *Hernandez* this Court concludes that Montes has failed to allege facts to support a reasonable inference of actionable "affirmative conduct" by Lincoln County. For this additional reason, the County's motion for judgment on the pleadings on Montes' due process claim should be granted. The Court need not reach the six-part test outlined above.

## III.   REMAINING STATE LAW CLAIMS

Under 28 U.S.C. § 1367(c), district courts may decline to exercise supplemental jurisdiction over a related state law claim if (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the federal claim, or (3) the court has dismissed all claims over which it has original jurisdiction. At least two of these factors exist in this case. First, the state law tort claims appear to be the heart of this case. It is those claims, which require the interpretation and application of New Mexico law, that will get to the heart of the liability issues raised by this case. Second, with the dismissal of Montes' due process claims, no other federal claims remain pending. "When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." *Koch*

*v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quoting *Smith v. City of Enid ex rel.*

*Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998)) (emphasis added).

Accordingly, having determined that Plaintiff's only federal claim—his claim for violation of Viola Montes' right to due process under the Fourteenth Amendment—should be dismissed, this Court declines to exercise supplemental jurisdiction over Plaintiff's supplemental state law claims. Accordingly, the Court will remand this case to the Twelfth Judicial District Court, County of Lincoln, State of New Mexico.

**IT IS THEREFORE ORDERED** that *County of Lincoln's and Sheriff Shepperd's Motion for Judgment on the Pleadings and Qualified Immunity* [Doc. 77] is **GRANTED IN PART**, and Plaintiff's claim for violation of the constitutional right to due process in Count II of the Amended Complaint is hereby **DISMISSED WITHOUT PREJUDICE**. Because the Court declines to exercise supplemental jurisdiction over the state law claims, the Court will not address the balance of the County's motion.

_____
**UNITED STATES DISTRICT JUDGE**